UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN SUTTON, ROBERT
HENDERSON, JAMIE MARZOL,
MARCUS LANEY, BRIAN ESPE,
MICHAEL SEALOCK and JOEL JUREK,

    Plaintiffs,

v.                                Case No:   6:14-cv-571-Orl-40TBS

CLAYTON HOSPITALITY GROUP, INC.,
CAROL URANICK, DOLL HOUSE, INC.
and WILAN CORPORATION,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion to Approve Settlement (Doc 108). After reviewing the motion and the docket I respectfully recommend that the motion be **denied**.

### I. Background

Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. ("FLSA"). On June 8, 2015, the Court dismissed the case without prejudice as to Plaintiffs Brian Espe and Michael Sealock (Doc. 109). The remaining Plaintiffs John Sutton, Robert Henderson, Jamie Marzol, Marcus Laney, and Joel Jurek, and Defendants Clayton Hospitality Group, Inc., DollHouse, Inc., Wilan Corporation and Carol Uranick, seek Court approval of their mediated settlement agreement (Doc. 108).

Plaintiffs worked as disc jockeys at adult entertainment establishments operated by Defendants (Doc. 65, ¶¶ 11-25, 36-38). For the most part, Plaintiffs were only compensated through the voluntary sharing of tips by the clubs' adult dancers (Id., ¶¶ 13,

15, 17, 19, 23, 25, 44, 46-47).   As a result of this compensation structure, Plaintiffs allege that they received less than the federal minimum wage for each hour they worked (Id., ¶ 72).[1]

In his answers to the Court's interrogatories, Sutton said that from April 21, 2013 through November 1, 2013, he worked 30 hours per week, for which he is owed $6,644.40 (Doc. 67, Nos. 3, 7B).   Sutton also says that from November 1, 2013 through August 15, 2014, he worked 7.5 hours per day, 3 days per week, for a total of 37.5 hours per week, for which he is owed $11,248 (Id.).   I assume Sutton was correct concerning the number of days per week and hours per day he worked during the period November 1, 2013 through August 15, 2014.   Based upon this assumption, I find the second part of his damage calculation to be wrong.   Three days of work per week at 7.5 hours per day equals a total of 22.5 hours per week.   When this amount is multiplied by the federal minimum wage of $7.25 per hour, for 41 weeks, the result is $6,688.   Combining these amounts, I find Sutton's total damage claim, according to his interrogatory answers, is $13,332.53.

In his interrogatory answers Henderson says that from December 2012 until January 2014 he worked 38 regular hours per week plus 18 overtime hours per week (Doc., 69, Nos. 7A-C).   He denies receiving any pay and claims that he is owed approximately $18,000 (Id., No. 7E).

---

[1] Defendants Uranick and Clayton Hospitality Group answered the corresponding allegation in the Amended Complaint (Doc. 44, ¶ 59) as follows: "59. Deny that Plaintiffs were employed by Defendants." (Doc. 45, ¶ 59).   This could be construed as an admission by these two Defendants that Plaintiffs' compensation per hour worked fell below the statutory minimum wage.   Denials "must fairly respond to the substance of the allegation," FED. R. CIV. P. 8(b)(2) and the substance of this paragraph addresses Plaintiffs' compensation levels.   Moreover, while Defendants were free to deny this paragraph's implication that Plaintiffs were employees (rather than independent contractors), that did not relieve them of the obligation to respond to the other parts of the allegations.   See FED. R. CIV. P. 8(b)(4) ("A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.").   Under the rules, silence in an answer is the equivalent of an admission.   FED. R. CIV. P. 8(b)(6).

According to Marzol's interrogatory answers, he began working for Defendants at the rate of $7.67 per hour (Doc. 70, No. 3, 5).  Beginning October 2, 2012 and continuing until May 2014, Defendants did not pay Marzol at all.  During this period, his entire compensation was tips he received from the dancers (Id., Nos. 5, 7A, D).  He continues to work for Defendants.  Beginning in May 2014 and continuing to the present, they have paid Marzol the minimum wage for tipped employees (Id.).  He claims "Treble damages as allowed by the FLSA - $42,366.22 inclusive of attorneys fees" for the period from October 2, 2012 to May 2014 (Id., 7E).  The FLSA does not provide for treble damages in connection with unpaid minimum wages, and all Plaintiffs state that their attorneys are handling this case on a contingent fee basis (Docs. 67-70 and 77, No. 9).  So, the first part of Marzol's damage claim is unknown.  He also claims $5,842 for the period from May 2014 to February 2, 2015 which is the date of his interrogatory answers (Id.).

Laney states in his interrogatory answers that he worked between 37.5 and 38 hours per week for Defendants from December 2012 through January 2014 for which he is owed approximately $4,580 (Doc., 68, No. 7A-E).

According to his answers to the Court's interrogatories, Jurek is due approximately $9,200 in unpaid wages based upon 35 hours worked per week for 36 weeks at $7.25 per hour (Doc. 77, No.7E).  Jurek says he worked for Defendants from October 2, 2012 to June 2013 (Id., No. 1).  Using his asserted hours and dates of employment, I calculate the actual amount of Jurek's claim to be $9,135.

On May 5, 2015 the parties filed a notice that they had reached a settlement at mediation (Doc. 100).  They did not disclose the terms of their agreement, provide a copy, or seek Court approval of their settlement (Id.).  The next day I entered an Order giving the parties 14 days to submit their agreement for Court approval (Doc. 101).  The

parties filed their mediated settlement agreement on May 6, 2015 (Doc. 102). The agreement was all that the parties filed. They did not submit a motion for approval, or otherwise explain why their agreement was a fair and reasonable settlement of Plaintiffs' FLSA claims (Id.).

The agreement was entitled "Confidential Mediated Settlement Agreement" and contained a confidentiality provision (Id.). Five days after they filed their agreement the parties motioned the Court to seal it (Doc. 104). The primary reason I denied the motion was that nondisclosure provisions in FLSA settlement agreements "further[ ] resolution of no bona fide dispute between the parties" while "thwart[ing] Congress's intent to ensure widespread compliance with" the FLSA. Dees v. Hydradry, 706 F.Supp.2d 1227, 1242 (M.D.Fla. 2010). For this reason, a number of courts routinely reject FLSA settlement agreements which contain confidentiality provisions. Housen v. Econosweep & Maintenance Serv., Inc., 2013 WL 245985 at *2 (M.D. Fla. June 6, 2013); DeGraff v. SMA Behavioral Health Serv., Inc., 2013 WL 2177984 at *4 (M.D. Fla. Mar. 5, 2013); Crabtree v. Volkert, Inc., 2013 WL 593500 at *4 (S.D. Ala. Feb. 14, 2013); Parker v. Encore Rehabilitation, Inc., 2012 WL 6680311 at *4-5 (S.D. Ala. Dec. 21, 2012); Webb v. CVS Caremark Corp., 2011 WL 6743284 at *1-2 (M.D. Ga. Dec. 23, 2011); Hamilton v. Brinker Int'l Payroll Co., 2011 WL 6032945 at *1 (M.D. Fla. Dec. 5, 2011); Walker v. U.S. Title Loans, Inc., 2011 WL 1789976 at *2 (M.D. Ala. May 10, 2011) (Doc. 105). My Order gave the parties 21 days (i.e., through June 1, 2015), to refile "a motion for approval in which they provide the Court all the information it needs to discharge its responsibility" under Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982) (Id.).

The parties missed the June 1 deadline. Their new motion, filed on the afternoon of June 4 includes, with one exception, the same settlement agreement they submitted in

May (Doc. 108).   The only change is that the confidentiality provision has been removed.

The relevant terms of the settlement agreement are:

> 1. Defendants shall pay to Plaintiffs the total sum of $77,500 compensatory damages for the purposes of physical injury, related sickness, and/or lost wages under Internal Revenue Code Section 104(a)(2) in full and complete settlement of this action. ... The Plaintiffs have agreed amongst themselves as to the individual distributions to each one of them.
>
> 2. <u>Dismissal.</u> The parties, ... shall dismiss all claims filed in the above captioned action.   Unless otherwise set forth herein, each party shall be responsible for its own attorneys fees and costs incurred in this action....
>
> * * *
>
> 4. <u>Mutual General Release.</u>   The parties, with the execution of this Agreement, do hereby grant a Mutual Release in favor of each other, together with each other's heirs, executors, administrators, officers, [etc.].   This Mutual General Release shall not apply to or serve to release any duties, responsibilities, or liabilities arising out of this agreement.
>
> 5. <u>Entire Agreement.</u>   This Agreement and the Exhibits attached hereto (if any) contains the entire understanding and agreement between the Parties hereto with respect to the subject matter hereof.   The Agreement may be modified only by written instrument(s) signed by all parties hereto.
>
> * * *
>
> 9. [A standard severability provision.]
>
> * * *

In their motion, the parties represent that the settlement sum is $75,500, rather than the $77,500 stated in their agreement (Doc. 108 at 2).   Nowhere in the settlement agreement are the damages allocated between Plaintiffs, and there is no provision for liquidated damages.   There is also no allocation for Plaintiffs' attorneys' fees and costs. In their motion, the parties state that they have allocated $55,500 for "back wages,"

nothing for liquidated damages, and $20,000 for Plaintiffs' attorney's fees and costs (Doc. 108, ¶ 3).

## II. Legal Standard

The United States Court of Appeals for the Eleventh Circuit has explained that an FLSA claim can be settled and resolved in two ways. First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. 29 U.S.C. § 216(c); Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1353 (11th Cir. 1982). Second, an employee may settle and waive claims under the FLSA if the parties present to a district court a proposed settlement agreement, and the district court enters a judgment approving the settlement. Lynn's Food Stores, Inc., 679 F.2d at 1353.

The district court must scrutinize the parties' settlement agreement and determine whether it is a "fair and reasonable resolution of a bona fide dispute" of the FLSA issues. Id. at 1354-55. If the parties' settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement in litigation." Id. at 1354. The nature of this lawsuit prompts the district court's review of the settlement agreement rather than an examination conducted by the Secretary of Labor. My assessment of fairness is guided by prevailing case law in this Circuit, including Dees v. Hydradry, 706 F. Supp. 2d 1227 (M.D. Fla. 2010) and Fiber Moreno v. Regions Bank, 729 F. Supp. 2d 1346 (M.D. Fla. 2010).

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings

and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)).

### III. Discussion

The parties' settlement agreement is riddled with problems. First, the Court still does not know how the settlement sum is allocated between the Plaintiffs. Consequently, the Court does not know if any Plaintiff is receiving a fair and reasonable amount. According to the agreement, Plaintiffs have decided amongst themselves who will receive what (Doc. 108-1, ¶ 1). This suggests they did not make an agreed, across-the-board reduction in the amount of their claims. Plaintiffs are all represented by the same attorneys who would appear to have a conflict if they participated in the negotiation of their clients' respective shares of the settlement sum.

The Court also has no idea who will receive the $2,000 difference between the $77,500 stated in the agreement and the $75,000 stated in the motion, or why the payment is being made. This is another example of the Court lacking the facts it needs to evaluate the parties' settlement agreement.

Under the settlement agreement Plaintiffs are not receiving liquidated damages. Liquidated damages are not punitive, but compensate employees for the real but often hard-to-measure costs associated with getting paid late. See Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707-09 (1945). If an employee establishes liability under the FLSA, the court must award liquidated damages unless the employer meets its burden of proving "that the act or omission giving rise to such action was in good faith and that he

had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act."  29 U.S.C. § 260; <u>Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.</u>, 515, F.3d 1150, 1163 (11th Cir. 2008).  Other circuits have observed that there is a "strong presumption" in favor of awarding liquidated damages under the statute. <u>Elwell v. University Hospitals Home Care Services</u>, 276 F.3d 832, 840 (6th Cir. 2002); <u>Nero v. Industrial Molding Corp.</u>, 167 F.3d 921, 929 (5th Cir. 1999); <u>Shea v. Galaxie Lumber & Constr. Co.</u>, 152 F.3d 729, 733 (7th Cir. 1998).

Most FLSA settlement agreements the Court evaluates provide equal amounts for liquidated damages and back wages.  Here, the parties say they valued liquidated damages at zero based upon Defendants' alleged reliance on the advice of a wage and hour compliance consultant (Doc. 108, ¶ 7).  This bald assertion is hardly sufficient for Defendants to meet their burden to overcome the strong presumption in favor of liquidated damages.  The complete elimination of liquidated damages in this case is not fair or reasonable given that Defendants have promised to pay Plaintiffs a substantial percentage of the back wages they have demanded.

The agreement, motion, and interrogatory answers offer different stories about how Plaintiffs' attorneys are to be paid.  The agreement expressly makes Plaintiffs responsible for paying their attorneys, rather than setting out the amount Defendants agreed to pay Plaintiffs' attorneys (Doc. 108-1, ¶ 3).  The agreement is silent on how much counsel will receive or from whom.  The motion states that Plaintiffs' attorneys are to receive $20,000 in attorney's fees, and that this amount was negotiated separately from and without regard to the amounts paid to Plaintiffs (Doc. 108, ¶¶ 3, 8, 22-23). According to their answers to the Court's interrogatories, all Plaintiffs have entered into contingent fee agreements with their counsel.  It appears to me that in fact, Plaintiffs'

attorneys are taking a contingent fee. I say this because counsel's rate is $300 per hour and at that rate, they would have had to work over 66 hours on the case to generate a $20,000 fee (see Docs. 67-70, 77). But, as of February 23, 2015, they had only spent 21 hours on the case (Doc. 77, No. 9). It is unlikely that between February 23 and April 23, when the case settled at mediation, counsel spent over 40 hours on this matter.

The Eleventh Circuit explained in Silva v. Miller, 307 Fed. Appx. 349, 351 (11th Cir. 2009), that the existence of a contingent fee agreement "is of little moment in the context of FLSA," which "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."

The parties cite Bonetti v. Embarq Management Co., 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), as the basis for approval of counsels' fee. In Bonetti, the court said it did not need to perform an independent lodestar analysis of plaintiff's fee in an FLSA case if the fee was negotiated separately and the settlement appeared to be fair. But, the Bonetti court said it would apply the lodestar method if "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." Id.

For the reasons already stated, I have reason to believe counsel's "separate negotiation" certification is false and that Plaintiffs' counsel are intending to collect a contingent fee without Court oversight. I also know from the number of FLSA settlement agreements I have reviewed that a $20,000 fee is significantly above the market rate for this case. Therefore, I am unwilling to recommend approval of this FLSA settlement agreement without conducting a lodestar analysis.

My next concern is with paragraph 4 of the settlement agreement entitled "Mutual General Release." (Doc. 108-1, ¶ 4). The paragraph lacks sufficient detail for me to tell what, if anything, the parties are releasing (Id.). If the paragraph is effective as a release of all claims by each party, it poses another significant obstacle to Court approval. Courts in this circuit have viewed general releases in FLSA settlement agreements as impermissible "'side deals' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and have found that such releases "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." Moreno, 729 F. Supp. 2d at 1351-52; see also id. at 1352 ("A compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny."); Bright v. Mental Health Resource Center, Inc., No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012) (general releases by plaintiffs "involved in a 'plain vanilla' FLSA case raising only FLSA claims" are "unfair and unacceptable").

If the mutual general release is effective, then there is reason to believe the "concession" Defendants are receiving through the release has real value. In their answers to the Court's interrogatories, two of the five Plaintiffs stated that they were fired because they complained about not being paid (Docs. 68, 69), and a third said he was fired after his attorneys filed this action (Doc. 67). These Plaintiffs may have viable claims against Defendants under the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3). See also Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011) (holding that verbal complaints are protected conduct under FLSA). I cannot recommend approval of a general release without adequate assurance that the

affected Plaintiffs are aware of the rights they may be giving up and without knowing the amount(s) of money they are receiving in return for the relinquishment of their rights.

Courts typically only approve general releases in FLSA settlement agreements where they are supported by independent consideration. DeGraff v. SMA Behavioral Health Serv., Inc., 945 F. Supp.2d 1324, 1329-30 (M.D. Fla. 2013); Caamal v. Shelter Mortgage Co., LLC, No. 6:13-cv-706-Orl-36KRS, 2013 WL 5421955, *4 (M.D. Fla. Sept. 26, 2013); Espinah v. Thrifty Speciality Produce of Ala., LLC, No. 6:13-cv532-Orl-28KRS, 2013 WL 4047011, *3 (M.D. Fla. Aug. 9, 2013); Kingsley v. Noonan, No. 6:12-cv-500, 2012 WL 3151572, at 1-2 (M.D. Fla. Aug. 2, 2012); Capers v. Noah's Ark Repair Serv., Inc., No. 6:11-cv-457-Orl-28TBS, 2013 WL 3153974 (M.D. Fla. June 19, 2013); Pavlosky v. Winghouse XI, LLC, Case No. 6:12-cv-1711, 2014 U.S. Dist. LEXIS 56436, at *4-5 (M.D. Fla. April 22, 2014). The parties have not identified any independent consideration for the general releases and they have not explained why the giving of general releases by Plaintiffs is permissible.

Finally, the settlement agreement provides that the settlement sum represents "compensatory damages for the purposes of physical injury, relates sickness, and/or lost wages under Internal Revenue Code Section 104(a)(2)." This is only partly true, and wholly ineffective to reduce the tax consequences to Plaintiffs. Back wages are just that–wages–and they are taxed as such. The Tax Court has rejected efforts to fit FLSA liquidated damages awards into section 104(a)(2)'s personal injury exclusion. See, e.g., Jacobs v. CIR, T.C. Memo. 2000-59, at *3-6 (2000).

### IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. The parties' motion for approval of their FLSA settlement agreement be **DENIED**

2. The parties be afforded 21 days in which to modify their settlement agreement and file a motion for approval of the modified agreement.

3. That Plaintiffs' counsel be required to submit the information necessary for the Court to make a lodestar analysis of their fees and costs.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on June 9, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record